IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUAN LEONARDO FULLER,

   Plaintiff,         Case No. 6:15-cv-01896-MC

   v.           OPINION AND ORDER

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

   Defendant.

_____

MCSHANE, Judge:

   Juan Leonardo Fuller challenges the Commissioner's decision denying his application for supplemental security income (SSI). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Mr. Fuller challenges the Administrative Law Judge's (ALJ) determination of his residual functional capacity (RFC). Mr. Fuller argues the ALJ erred by discrediting the opinions of several medical providers and Mr. Fuller's own testimony. Additionally, Mr. Fuller challenges

1 – OPINION AND ORDER

the ALJ's determination at step five of the Social Security Administration's (SSA) sequential disability evaluation. At step five, Mr. Fuller alleges the ALJ identified jobs with exertion requirements beyond what Mr. Fuller's RFC would allow. Because the ALJ's determination was based on proper legal standards and supported by substantial evidence in the record, this Court AFFIRMS the Commissioner's decision finding Mr. Fuller not disabled.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The SSA utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2012). The claimant has the burden to prove the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden

shifts to the Commissioner for step five. *Id.* § 404.1520. At step five, the Commissioner must show the claimant is capable of adjusting to other work existing in significant numbers in the national economy, given the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, the claimant is disabled. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). However, if the Commissioner proves the claimant can perform other work, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

As an initial matter, Mr. Fuller alleges the ALJ's *ex parte* contact with Mr. Fuller requires remand. Mr. Fuller's allegation comes from the following exchange at the beginning of Mr. Fuller's hearing:

> ALJ: All right. Mr. Fuller, I think we've met once before. I'm Judge O'Brien-Persons.
>
> Mr. Fuller: Okay. Nice to meet you again.

Tr. 33.[1]

Mr. Fuller argues it was reversible error when the ALJ failed to unilaterally explain her prior interaction with Mr. Fuller. Mr. Fuller argues this even though he, himself a party to the alleged contact, is unable to explain or describe it either. Although he describes the contact as "ex parte contact," in fact there is no indication that the contact was made in the context of this case or any other case. We are left to speculate whether the ALJ had run into Mr. Fuller at a soccer game, a social event, or a grocery store. Or perhaps the ALJ simply mistook Mr. Fuller for someone else. The burden is on Mr. Fuller to show the *ex parte* contact, if it occurred at all, prejudiced the ALJ's decision. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Mr. Fuller makes no attempt to do so, and his brief even seems to concede he cannot meet this burden. Pl. Opening Br. 15, ECF No. 14. Though he now demands "full disclosure regarding this contact,"

---

[1] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

his argument as to why this court should jump down that rabbit hole is as vague as the alleged

contact itself. Even if Mr. Fuller attempted to argue prejudice here, and he does not, the

argument would be meritless.

      Mr. Fuller brings two additional claims. First, Mr. Fuller argues the ALJ, in assessing Mr.

Fuller's RFC, improperly discredited the testimony of Mr. Fuller, as well as the medical opinions

of several health providers. Second, Mr. Fuller alleges the ALJ erred in finding Mr. Fuller

capable other work at step five of the sequential evaluation. This Court rejects both arguments.

In assessing Mr. Fuller's RFC, the ALJ based her determinations on the proper legal standards;

substantial evidence in the record supports those determinations. At step five, the ALJ properly

used a Vocational Expert (VE) to identify other work suitable for Mr. Fuller and confirmed the

VE's testimony was consistent with the Dictionary of Occupational Titles (DOT).

## I. Mr. Fuller's RFC

      The ALJ determines the claimant's RFC "based on all of the relevant medical and other

evidence." 20 C.F.R. § 404.1545(a)(3) (2016). After considering the entire record, the ALJ

determined Mr. Fuller's RFC would allow him:

> to lift/carry 20 pounds occasionally and 10 pounds frequently, to walk and/or
> stand for 2 hours in an 8-hour workday, and to sit for the remaining portion of the
> workday with the opportunity to adjust his position every hour for brief
> adjustment. The claimant can occasionally climb, bend, kneel, crouch, and crawl
> due to obesity and fatigue. The claimant must avoid concentrated exposure to
> pulmonary irritants and avoid moderate exposure to workplace hazards. The
> claimant can perform simple, routine, repetitive tasks and no assembly-line work.

Tr. 20. Mr. Fuller alleges the ALJ improperly weighed the opinions of treating physician Dr.

Kristin Bradford, Family Nurse Practitioner (FNP) Paula Dalesky, and non-examining physician

Dr. Michael Spackman. Mr. Fuller also alleges the ALJ improperly discredited Mr. Fuller's own

testimony regarding his physical limitations. Mr. Fuller's arguments lack merit. Because the

ALJ's findings are based on proper legal standards and supported by substantial evidence in the record, the ALJ's decision is AFFIRMED. 42 U.S.C. § 405(g); *Batson*, 359 F.3d at 1193.

## A. Dr. Kristin Bradford's Opinion

Dr. Kristin Bradford has been Mr. Fuller's primary care provider since at least 2010. Dr. Bradford, a family general practitioner, wrote two letters in support of Mr. Fuller's disability application. The first letter, dated August 15, 2013, was brief, conclusory, and lacked objective medical evidence. Dr. Bradford simply mentioned Mr. Fuller's hospitalization and concluded, "Given [Mr. Fuller's] combination of mental and physical diagnoses, he is precluded from any work at this time." Tr. 687. The first letter was essentially just a statement that Mr. Fuller is disabled. Whether Mr. Fuller is disabled is the ultimate issue reserved to the Commissioner. SSR 96-5p. The ALJ may not give controlling weight or special significance to statements on the ultimate issue, even if the statement comes from a treating physician. *Id.*

The second letter, written September 27, 2013, discussed in greater detail Dr. Bradford's concerns regarding Mr. Fuller's cognitive impairments. However, Dr. Bradford also wrote, "Cognitive testing was not pursued . . . ." Tr. 817. Dr. Bradford is a family practice physician and Mr. Fuller's cognitive limitations fall outside of her area of medical expertise. The ALJ may give less weight to portions of a treating physician's opinion that fall outside of the doctor's expertise. *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.2 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(5)) ("[A] treating physician's opinion on some matter may be entitled to little if any weight. This might be the case . . . if the treating physician . . . offers an opinion on a matter not related to her or his area of specialization . . . ."). The ALJ gave more weight to the neuropsychological screening administered by licensed psychologist Dr. Douglas Smythe. Dr. Smythe found no mental impairments that would preclude Mr. Fuller from relatively simple

employment. Tr. 838–54. The results of the neuropsychological exam present more than a mere scintilla of evidence supporting the ALJ's decision to give lesser weight to portions of Dr. Bradford's opinion.

Regarding Mr. Fuller's physical limitations, the ALJ gave specific, legitimate reasons for giving little weight to Dr. Bradford's opinion. Although Dr. Bradford expressed concern over Mr. Fuller's cardiopulmonary functioning, Mr. Fuller's self-reported activities surpass the physical limitations Dr. Bradford described. For example, around the time Dr. Bradford wrote both letters, Mr. Fuller was riding his bike up to two miles a day, smoking marijuana "as often as he can," and smoking up to five cigarettes a day. *Id.* at 48, 695. These activities contradict Dr. Bradford's opinion that Mr. Fuller's cardiopulmonary limitations prevent him from working. Treatment notes from other physicians discuss Mr. Fuller's improved physical condition around the time of Dr. Bradford's two letters. *E.g.*, *id.* at 700 ("Patient does not appear short of breath. He is breathing easily."). The record provides more than a mere scintilla of evidence supporting the ALJ's decision to give less weight to Dr. Bradford's opinion. Therefore, this Court may not second-guess the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

## B. FNP Paula Dalesky's Opinion

FNP Paula Dalesky worked with Dr. Bradford as part of the interdisciplinary team giving primary medical care to Mr. Fuller. On December 13, 2011, Ms. Dalesky filled out a physical capacity statement on behalf of Mr. Fuller. In the capacity statement, Ms. Dalesky described limitations that could preclude Mr. Fuller from work. For example, Ms. Dalesky opined Mr. Fuller's impairments would render him unable to complete even simple, two-step tasks up to a third of the work day. Tr. 483.

The timing of the capacity statement explains the limited weight given to it by the ALJ. When Ms. Dalesky filled out the capacity statement, Mr. Fuller had just been released from an extended hospitalization where he essentially died, was resuscitated, and then spent a lengthy amount of time in the intensive care unit. The ALJ explained that, while the capacity statement may have accurately described Mr. Fuller's limitations at the time, there was no evidence Mr. Fuller's more severe symptoms lasted longer than the twelve months required to show disability.

A nurse practitioner's opinion is an "other source." 20 C.F.R. § 404.1513(d). The ALJ may reject "other source" opinions if the ALJ provides germane reasons for doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Despite the temporal limitations of the capacity statement, the ALJ mostly accepted Ms. Dalesky's opinion. The ALJ used Ms. Dalesky's assessment of Mr. Fuller's lifting and movement capabilities almost exactly. *Compare* Tr. 20 *with* Tr. 481–83. The ALJ only rejected Ms. Dalesky's opinion on the duration of Mr. Fuller's most severe limitations. *Id.* at 21–22. Mr. Fuller's current, improved condition is a germane reason to reject parts of Ms. Dalesky's opinion. As evidence of Mr. Fuller's current, improved condition, the ALJ noted Mr. Fuller's self-reported daily activities and the neuropsychological evaluation performed by Dr. Smythe. Mr. Fuller's activities and Dr. Smythe's assessment provide more than a mere scintilla of evidence supporting the limited weight the ALJ gave parts of Ms. Dalesky's opinion. Therefore, this Court may not second-guess the ALJ's decision. *Thomas*, 278 F.3d at 959.

## C. Dr. Michael Spackman's Opinion

Mr. Fuller alleges the ALJ failed to address the opinion of non-examining physician Dr. Michael Spackman. However, the ALJ addressed the opinions of non-examining state physicians, including Dr. Spackman, and gave them partial weight. Tr. at 23. The ALJ actually

imposed greater limitations on Mr. Fuller's ability to work than those suggested by Dr.

Spackman. For example, Dr. Spackman opined Mr. Fuller has absolutely no postural limitations.

*Id.* at 66. The ALJ rejected this portion of the opinion and incorporated postural limitations into

Mr. Fuller's RFC. Mr. Fuller does not challenge the ALJ's introduction of postural limitations

into his RFC.

Mr. Fuller's allegation focuses on Dr. Spackman's 2012 Disability Determination

Explanation, which was part of Mr. Fuller's original, rejected claim for disability benefits. *Id.* at

58–68. Specifically, Mr. Fuller alleges Dr. Spackman intended to limit Mr. Fuller to sedentary

work. Mr. Fuller bases this allegation on Dr. Spackman's application of the Medical-Vocational

Rules. It is true Dr. Spackman listed "sedentary" as Mr. Fuller's maximum sustained work

capability, *id.* at 67, but he did so in the context of finding Mr. Fuller "not disabled," *id.* at 68.

Mr. Fuller does not attempt to explain how or why Dr. Spackman's application of the Medical-

Vocational Rules should have changed the ALJ's determination. Instead, Mr. Fuller simply

argues the ALJ failed to address Dr. Spackman's opinion at all. As explained above, that

allegation is false, and the ALJ in fact imposed more limitations than Dr. Spackman suggested.

## D. Mr. Fuller's Testimony

The ALJ found less than credible Mr. Fuller's testimony on his own limitations.[2] The

ALJ is not "required to believe every allegation of disabling pain, or else disability benefits

would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*

*v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th

Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v.*

---

[2] Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2.

*Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include

"ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). Here, the ALJ supported her

credibility determination with references to several of the above factors. Specifically, the ALJ

noted Mr. Fuller's daily activities and the objective medical evidence in the record that

contradicts Mr. Fuller's testimony.

Mr. Fuller testified his cardiopulmonary function is so limited he has difficulty walking

up the ten steps to his apartment without getting winded. Tr. 40. However, Mr. Fuller's self-

reported daily activities include riding his bike up to two miles and walking around town.

Despite Mr. Fuller's testimony on his of shortness of breath, he smokes marijuana "as often as he

can" and smokes up to five cigarettes a day. *Id.* at 48, 695. These are "specific, clear and

convincing reasons" for rejecting portions of Mr. Fuller's testimony. *Vasquez v. Astrue*, 572,

F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Third-party reports in the record confirm his daily activities. *E.g.*, Tr. 208–15. Additionally,

objective medical reports in the record describe Mr. Fuller's improved cardiopulmonary

functioning. *E.g.*, Tr. 1003 ("He denies any . . . shortness of breath."). Although Mr. Fuller

would interpret the record differently, the ALJ's rational conclusion must be upheld. *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where the evidence is susceptible to more than one

rational interpretation, the Commissioner's conclusion must be upheld).

## II. The ALJ's Step-Five Burden

At step five, the ALJ has the burden "to identify specific jobs existing in substantial numbers in the national economy claimant can perform despite [the claimant's] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ may enlist testimony from a VE to help identify potential suitable employment opportunities for the claimant. 20 C.F.R. § 404.1566(e). If the ALJ uses a VE, the ALJ must ask the VE if the expert's testimony conflicts with the DOT. SSR 00-4p. If the VE's testimony conflicts with the DOT, the ALJ must obtain "a reasonable explanation for any deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

Mr. Fuller's Opening Brief claims, "The ALJ did not ask, nor did the VE testify that his [sic] testimony was either consistent nor [sic] inconsistent with the [DOT]." Pl. Opening Br. 4, ECF No. 14. During Mr. Fuller's administrative hearing, however, the ALJ specifically asked the VE, "has your testimony been in accordance with the DOT . . . ?" Tr. 56. The VE answered, "Yes, your Honor." *Id.* The ALJ thus satisfied the requirements of SSR 00-4p. Beyond the requirements of SSR 00-4p, Mr. Fuller essentially argues the VE was wrong about her testimony's consistency with the DOT.

Mr. Fuller alleges the VE identified jobs with exertion requirements that Mr. Fuller's RFC will not allow. Each job identified for Mr. Fuller is "light work" according to the DOT. The DOT defines "light work" as follows:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entail pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace

> entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT Appendix C. Comparing the above definition with Mr. Fuller's RFC, there is nothing incompatible about the two. Nevertheless, Mr. Fuller alleges "light work" requires more standing and walking than his RFC would allow.

Mr. Fuller's RFC allows him to stand or walk for up to two hours per eight-hour workday. The DOT does not specify how many hours per day an employee will be expected to stand or walk. "Light work" may frequently require standing or walking, but "light work" can also involve sitting most of the time. Mr. Fuller's RFC allows him to sit most of the time.

Curiously, Mr. Fuller does not cite the DOT to support his argument that the DOT's definition of "light work" conflicts with his RFC. Instead, Mr. Fuller cites the glossary at the end of SSR 83-10, which clarifies the way judges should approach step five. According to SSR 83-10, light work "requires a good deal of walking or standing" and the ability to frequently lift or carry objects up to ten pounds. SSR 83-10's definition of "frequent" adds, "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Mr. Fuller argues these definitions together mean "light work" requires at least six hours of standing or walking each workday. Even assuming Mr. Fuller's interpretation is correct, his argument fails because SSR 83-10's definitions are not controlling in this case.

SSRs deserve "some deference," but only if they remain consistent with the Social Security Act and its implementing regulations. *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006). To the extent SSR 83-10's definitions apply at all, they merit deference only as far as they mirror the SSA's regulations. The SSA's regulations and the DOT omit any specific

enumeration of the hours one must stand or walk during the workday. Mr. Fuller's interpretation of SSR 83-10 would have this Court read six-hours-per-day standing and walking requirements into the DOT where they do not currently exist. Therefore, even if correct, Mr. Fuller's interpretation of SSR 83-10 departs from the regulations and deserves no deference in this case.

VE testimony cannot realistically avoid every conceivable implicit conflict with the DOT. Put convincingly by the Fifth Circuit, "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT." *Carey v. Apfel*, 230 F.3d 131, 147–46 (5th Cir. 2000). Mr. Fuller's argument is exactly the type described by the Fifth Circuit. Mr. Fuller correctly points out minor inconsistencies between the regulations, the DOT, SSR 83-10, and other administrative documents. However, Mr. Fuller's RFC is fully compatible with the DOT's definition of "light work." Therefore, when the ALJ ascertained the VE's testimony was consistent with the DOT, the ALJ satisfied her step-five burden.

## CONCLUSION

The ALJ based her decision on the proper legal standards and supported her findings with substantial evidence in the record. Therefore, this Court AFFIRMS the Commissioner's final decision denying Mr. Fuller SSI disability benefits.

IT IS SO ORDERED.

DATED this 15th day of December, 2016.


_____/s/ Michael McShane_____
Michael McShane
United States District Judge


12 – OPINION AND ORDER